IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Siaurora, Inc., SICR, Inc., SIR, Inc., Starfish Ventures, Inc., and Greg Schmid,<br><br>Plaintiffs,<br><br>v.<br><br>State of Illinois, and Jerry Costello, II,<br><br>Defendants. | Case No. 3:22-cv-50038<br><br>Honorable Iain D. Johnston |

**MEMORANDUM OPINION AND ORDER**

On August 27, 2021, the State of Illinois enacted Public Act 102-0586 ("the Amendment"), which amended the Illinois Animal Welfare Act. The Amendment was designed to curb the market available to so-called "puppy mills," breeders that employ unethical or inhumane practices. In this action, a group of pet stores seek a declaration that the Amendment is unconstitutional and an injunction against its enforcement. Because the Amendment goes into effect today—February 23, 2022—Plaintiffs have filed this motion for a temporary restraining order and a preliminary injunction. For the reasons explained below, that motion [8] is denied.

**A. Scope of the pending motion**

Plaintiffs originally brought three claims in this action. In Count I, Plaintiffs contend that the Amendment violates the Equal Protection Clause of the Fourteenth Amendment. In Count II, Plaintiffs asserted that the Amendment violates the Commerce Clause's implicit prohibition on state interference with

1

interstate commerce, often referred to as the dormant commerce clause. In Count III, Plaintiffs alleged that the Amendment violates the Illinois Constitution.

Shortly after the Court's initial status conference, Plaintiffs represented that they would not continue to seek a preliminary injunction for their claims under the Illinois Constitution and the dormant commerce clause. Indeed, those claims run into the twin brick walls of *Pennhurst State Sch. & Hospital v. Halderman*, 465 U.S. 89 (1984) and *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495 (7th Cir. 2017). In *Pennhurst*, the Supreme Court held that claims seeking federal equitable relief for alleged state law violations are barred by the Eleventh Amendment. "[I]t is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law. Such a result conflicts directly with the principles of federalism that underlie the Eleventh Amendment." *Pennhurst*, 465 U.S. at 106. The Supreme Court later reaffirmed that instruction in *City of Chicago v. Int'l College of Surgeons*, 522 U.S. 156, 177 n.3 (1997). And in *Park Pet Shop*, the Seventh Circuit addressed a remarkably similar Chicago ordinance and held that it did not violate the dormant Commerce Clause. 872 F.3d at 501–04. In light of those obstacles, Plaintiffs reaffirmed at today's hearing that they were not proceeding on these claims, instead focusing on their equal protection claim.

**B. The Amendment**

The Amendment modifies section 3.8 of the Act to limit the dogs and cats sold at pet shops in Illinois to only those obtained from certain animal shelters and

control facilities: "A pet shop operator may offer for sale a dog or cat only if the dog or cat is obtained from an animal control facility or animal shelter, located in-state or out-of-state, that is in compliance with section 3.9."[1] Illinois Public Act 102-0586, § 3.8. Section 3.9, which the Amendment adds to the statute, then regulates the source of dogs and cats offered at animal shelters and control facilities:

> An animal control facility or animal shelter *that supplies dogs or cats to pet shop operators* to be offered for sale shall not be a dog breeder or a cat breeder or obtain dogs or cats from a dog breeder, cat breeder, a person who resells dogs or cats from a breeder, or a person who sells dogs or cats at auction in exchange for payment or compensation.

§ 3.9(a) (emphasis added). In other words, the Amendment removes pet shops from the stream of commerce that begins with dog and cat breeders. It requires pet shop operators to obtain their dogs and cats from animal shelters and control facilities—not from breeders. Those animal shelters and control facilities are then only allowed to sell dogs and cats to pet shops if those animals were not obtained from breeders, which effectively prevents pet shops from selling dogs obtained from breeders.[2]

## C. Legal Standard

Though the two motions have differing results, the legal standard employed on a motion for a temporary restraining order is the same as that of a preliminary

---

[1] If a pet shop violates the requirements of section 3.8, then the pet shop will no longer be authorized to sell cats or dogs regardless of the source of those animals. § 3.8(c).
[2] The Amendment also defines animal shelters and animal control facilities. Under the Amendment, animal shelters are facilities "operated, owned, or maintained by a duly incorporated humane society, animal welfare society, *or other non-profit organization*." Illinois Public Act 102-0586, § 2 (emphasis added). Animal control facilities are those "operated by or under contract for the State, county, or any municipal corporation or political subdivision of the State for the purpose of impounding or harboring seized, stray, homeless, abandoned or unwanted dogs, cat, and other animals." *Id.*

3

injunction. *Mays v. Dart*, 453 F. Supp. 3d 1074, 1087 (N.D. Ill. 2020). To succeed, the plaintiff must overcome the threshold analysis by showing that (1) the plaintiff will suffer irreparable harm in absence of court intervention, (2) that traditional legal remedies are not adequate, and (3) that the plaintiff has a likelihood of success on the merits. *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Under the likelihood of success analysis, the plaintiff must show "more than a mere possibility of success." *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 762 (7th Cir. 2020). Indeed, the plaintiff faces a "significant burden" that stops short of requiring proof by a preponderance of the evidence but nonetheless requires a strong showing. *Id*. at 763. That showing "normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id*. The Court is not bound by strict rules of evidence at a preliminary injunction hearing. *Streight v. Pritzker*, No. 21-cv-50339, 2021 U.S. Dist. LEXIS 180894, at *7-8 (N.D. Ill. Sep. 22, 2021) (collecting cases). And though the parties may present evidence, the State has no obligation to produce evidence to support the rationality of the challenged statute. *Heller v. Doe*, 509 U.S. 312, 320 (1993).

At times, courts in this Circuit have held that plaintiffs need only show a greater than negligible likelihood of success on the merits. *E.g., Valencia v. City of Springfield*, 883 F.3d 959, 966 (7th Cir. 2018); *AM Gen. Corp. v. DaimlerChrystler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002); *Vill. of Orland Park v. Pritzker*, 475 F. Supp. 3d 866, 889 (N.D. Ill. 2020); *Slaters v. Chicago Transit Auth.*, No. 20-cv-3356, 2020 U.S. Dist. LEXIS 112244, at *10–11 (N.D. Ill. June 26, 2020). But recently, the

4

Seventh Circuit explained that "the 'better than negligible' standard was retired by the Supreme Court." *Ill Republican Party*, 973 F.3d at 763. Instead, federal courts analyze whether the plaintiff has established a strong likelihood of success on the merits. *Id.*

If the plaintiff passes the threshold analysis, courts proceed to a balancing test, which acts more like a sliding scale approach. *Mays*, 974 F.3d at 818. In this analysis, the Court weighs the harm the plaintiff would suffer in absence of the preliminary injunction with the harm the defendant would incur if the Court granted the injunction. *Id.* But "the more likely the plaintiff is to win on the merits, the less the balance of harms needs to weigh in his favor, and vice versa." *Id.*

### D. Equal Protection—Likelihood of success on the merits

The Fourteenth Amendment to the U.S. Constitution prohibits states from passing laws that "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV. But the clause "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *FCC v. Beach Communs.*, 508 U.S. 307, 313 (1993). As Justice Thomas explained in *Beach Communications*, "In areas of social and economic policy, a statutory classification that neither proceeds along suspect lines nor infringes fundamental constitutional rights must be upheld against an equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* And in *Armour v. City of Indianapolis*, the Supreme Court explained that if the challenged law merely

5

involves "ordinary commercial transactions," the "rational basis review requires deference to reasonable underlying legislative judgments." 566 U.S. 673, 680 (2012).

In this case, Plaintiffs challenge the constitutionality of preventing pet shops from selling dogs and cats they obtain from breeders. That prohibition squarely falls within the domain of rational basis review because no suspect classes or fundamental rights are involved. Instead, the Amendment merely contemplates "ordinary commercial transactions" as discussed in *Armour*.[3]

Rational basis review is not onerous. Indeed, rational basis review presumes the constitutionality of the statute in question. *Beach Communications*, 508 U.S. at 314. To prevail on the merits, plaintiffs must establish the lack of a "rational relationship between the disparity of treatment and some legitimate governmental purpose." *Armour*, 566 U.S. at 680 (quoting *Heller v. Doe*, 509 U.S. 312, 319–20 (1993)). But because legislatures are not required to articulate the legitimate purpose of the statute in the statute itself, "it is entirely irrelevant for constitutional purposes whether the conceived reason for the challenged distinction actually motivated the legislature." *Beach Communications*, 508 F.3d at 315.

Because the Court is now asked only to decide whether a temporary restraining order and preliminary injunction are warranted, Plaintiffs do not need to prove their case by a preponderance of the evidence. In other words, they are not required to establish by a preponderance of the evidence that the law is not rationally related to a legitimate governmental purpose. Instead, they must merely

---

[3] Furthermore, the parties agreed at the hearing that rational basis review is appropriate.

6

establish a strong likelihood of success on that question. *Ill. Republican Party*, 973 F.3d at 762.

Plaintiffs' argument centers on the contention that the Amendment treats pet shops differently. Indeed, it singles them out and prevents them from purchasing dogs and cats from breeders directly, and instead requires that they source their animals from shelters and control facilities. In support, Plaintiffs argue that the text of the Amendment does not prevent animal shelters and control facilities from sourcing dogs and cats from breeders; the Amendment only prevents pet shops from operating in the stream of commerce that begins with breeders.[4]

As noted above, section 3.9 of the Amendment provides, "An animal control facility or animal shelter *that supplies dogs or cats to pet shop operators* to be offered for sale shall not be a dog breeder or a cat breeder or obtain dogs or cats" from such breeders. Illinois Public Act 102-0586, § 3.9 (emphasis added). The text "that supplies" is a restrictive clause that modifies the preceding text. In other words, that section of the Amendment does not apply to animal control facilities and animal shelters that do not supply dogs or cats to pet shops. On a plain reading of the Amendment, animal shelters and control facilities could offer for sale any dog or cat obtained from a breeder, without running afoul of the Amendment, so long as they don't sell to pet shops. Thus, the Amendment merely removes pet shops from the stream of commerce that begins with breeders.

---

[4] Essentially, Plaintiffs' contention is that the Amendment overly burdens pet shops, as opposed to other entities, and puts Plaintiffs at significant risk of going out of business.

7

Of course, regardless of that clause, the result was already the same. By amending the statute in this way, the state legislature made the decision to remove pet shops from this stream of commerce. They did not ban breeders. The only difference now is that consumers wishing to purchase cats or dogs from breeders will be required to patron the breeders directly, or maybe an animal control facility or shelter that does not sell to pet shops. And even though the text of the Amendment would allow shelters and control facilities to remain in business with breeders (or establish such a business relationship), they have no financial incentive to do so. The statutory definition of those facilities requires that they be nonprofit organizations. Illinois Public Act 102-0586, § 2.

But the fact that a state statute singles out a particular group does not mean the statute is unconstitutional. A great deal of policymaking requires line drawing: "Defining the class of persons subject to a regulatory requirement – much like classifying governmental beneficiaries – 'inevitably requires that some persons who have an almost equally strong claim to favored treatment be placed on different sides of the line, and the fact [that] the line might have been drawn differently at some points is a matter for legislative, rather than judicial, consideration.'" *Beach Communications*, 508 U.S. at 315–16. And though the law must be rationally related to a legitimate governmental purpose, the Equal Protection Clause "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Id.* at 313. At bottom, the fact that the law singles out one group is not dispositive.

8

In this case, Plaintiffs adamantly protest that the Amendment is unwise. In oral argument, counsel argued that the Amendment would be counterproductive, that it would exacerbate the problem by removing from the stream of commerce a regulated entity (pet shops that currently must only purchase from licensed breeders) and replacing those sales with direct-to-customer transactions. Those consumer transactions, the argument continues, would result in more sales by unethical breeders because consumers are less capable of spotting bad actors, especially when such sales are made through use of the Internet. As Plaintiffs see it, consumers are not aware of federal and state licensing and regulatory requirements and are simply not as sophisticated as pet shops.

Multiple problems bely that argument, however. For starters, consumers are already allowed to purchase dogs and cats directly from breeders. And the idea that direct-to-consumer sales may increase with pet shops removed from the equation does not make the law irrational. Plaintiffs contend that consumers are ill-equipped to spot bad actors, and indeed may not even be allowed to view the premises in some cases, but the opposite could just as well be true. If more consumers do business directly with breeders, then the bad acts of some of those breeders may see heightened exposure, for example if those customers used social media to inform other consumers about the state of affairs at a breeder's facility or home.

But the Court is not qualified—or constitutionally empowered—to decide which of those policy arguments is correct. States and municipalities across the country pass laws and ordinances on a regular basis. Some of those laws are well

reasoned, some are not. Some of those laws are successful, some are not. But regardless of the wisdom of a law, the Court cannot interject unless that law violates the strictures of the U.S. Constitution. The Court does not "sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines." *New Orleans v. Dukes*, 427 U.S. 297, 303 (1974). Those decisions are left to politics.

With the policy arguments out of the way, the clear focus of the equal protection analysis must only ask whether targeting pet shops is rationally related to a legitimate governmental purpose. The Court agrees with Plaintiffs that the plain text of the statute singles out pet shops, but that is not enough. At the preliminary injunction hearing, the State of Illinois argued that the State has a legitimate interest in reducing puppy mill operations and increasing adoptions of shelter animals. Plaintiffs did not challenge whether these interests were legitimate. Indeed, nobody disputes that governments have a legitimate interest to ensure the humane treatment of animals. *Maryeli's Lovely Pets v. City of Sunrise*, No. 14-61391, 2015 U.S. Dist. LEXIS 98451, at *12 (S.D. Fla. Jun. 24, 2015) ("Protecting the health and welfare of domestic animals is a legitimate government interest; indeed, courts around the country have so held."). Instead, Plaintiffs argued that the challenged Amendment is not rationally related to those legitimate interests. As explained above, Plaintiffs often asserted that the Amendment will instead prove counterproductive, or at least has been ineffective in other states.

10

When determining whether a challenged statute is rationally related to the legitimate governmental interest, the Court need not find that the statute is a perfect fit. *City of Chicago v. Shalala*, 189 F.3d 598, 606–07 (7th Cir. 1999). Instead, the Amendment "must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 606 (quoting *Heller*, 509 U.S. at 319).

Here, the legislature attempted to limit the market for puppy mills and increase the adoption of shelter pets by preventing pet stores from selling dogs and cats obtained from breeders. Such a limitation on pet stores might be unwise,[5] though the Court states no opinion on the subject, but the limitation is rationally related to the purpose of the statute. Time may prove Plaintiffs correct. If so, they are free to lobby their legislators for a change to the law. But on failing to persuade lawmakers and the public of the veracity of their position, they may not now turn to the Courts to intervene in a question squarely within the realm of politics. Indeed, the decision the Court makes today should not be a surprise. A similar question was raised in *National Paint & Coatings Association v. City of Chicago*, 45 F.3d 1124 (7th Cir. 1995). In that case, the plaintiff challenged the City of Chicago's decision to ban spray paint in an effort to curb the proliferation of graffiti. *Id.* at 1126. The Seventh Circuit noted that the City ordinance was broad and may not actually produce a reduction in vandalism. (Among many other locations, Hubbard's Cave

---

[5] *See Brown v. Chicago Bd. of Educ.*, 824 F.3d 713, 714 (7th Cir. 2016) ("Justice Scalia once said that he wished all federal judges were given a stamp that read "stupid but constitutional."").

11

proves the ordinance did not prevent graffiti in Chicago.) But though "Chicago's law may well be folly," it was constitutional. *Id.* at 1132. It was rationally related to the legitimate governmental interest in reducing the spread of graffiti in the City.

The Court's holding today is also in line with the decision of every court in the country to take up this question. At the hearing, counsel for Plaintiffs even recognized that no court in the country has yet to strike down a puppy mill statute as violative of the Equal Protection Clause. Indeed, another court in this district found a similar argument unavailing. In *Missouri Pet Breeders Association v. County of Cook*, the court explained, "the Court finds meritless plaintiffs' argument that the ordinance is 'actually counterproductive' because it encourages consumers to purchase from unlicensed and unregulated brokers." 106 F. Supp. 3d 908, 920 (N.D. Ill. 2015). Just as the Court holds here, the *Missouri Pet Breeders* court held that the judiciary does not determine the "correctness" of the challenged statute. *Id.* Nor does the Court require the State to produce evidence to support the stated purpose. Instead, the State may even rely on "rational speculation unsupported by evidence or empirical data" to support its explanation for the Amendment. *Id.* Because the State has articulated a legitimate government interest and because that interest appears at least rationally related to its decision to single out pet shops, Plaintiffs have not shown a likelihood of success on the merits. *See also Perfect Puppy, Inc. v. City of E. Providence*, 98 F. Supp. 3d 408, 420 (D.R.I. 2015) ("As discussed *supra*, a municipality could rationally determine that prohibiting the sale of certain animals will help reduce the demand for these animals that

12

perpetuates pet mills, known for their inhumane practices. Limiting the sale of animals by commercial establishments could also plausibly help reduce animal overpopulation, and protect consumers from buying sick animals.").

Maybe further development of the record in this case will produce a different result. But at this stage, the Court need only hold that Plaintiffs have not shown a likelihood of success on the merits, so they are not entitled to a temporary restraining order or a preliminary injunction.

### E. Conclusion

For the foregoing reasons, Plaintiffs' motion for a temporary restraining order and preliminary injunction [8] is denied. By March 11, 2022, Plaintiffs must file a written status report informing the Court whether they intend to proceed with this litigation. Failure to file the written status report will result in dismissal of this suit for want of prosecution. Fed. R. Civ. P. 41(b).

Date: February 23, 2022

_____
Honorable Iain D. Johnston
United States District Judge